---
Levy *v.* Hart.
---

the defendant to deface the paper, by putting the words "payment stopped" upon the check when presented, after such certification, is indefensible, without legal right or authority, and the party presenting the check had a legal right to erase these words and restore the check to the condition in which it was. (*Claflin* v. *The Farmers and Citizens' Bank*, 25 *N. Y. Rep.* 300. *Meads* v. *The Merchants' Bank of Albany*, *Id.* 143.)

*By the Court*, GEO. G. BARNARD, J. The plaintiffs were holders for value. It was so found by the referee, and the testimony clearly bears him out in his conclusion. His opinion covers every point raised, and does not require any additional views.

The judgment should be affirmed.

[NEW YORK GENERAL TERM, June 7, 1869. *Clerke, Cardozo*, and *Geo. G. Barnard*, Justices.]

---

JONAS P. LEVY *vs.* MITCHELL HART, trustee &c., and others.

By the terms of a trust deed the grantor professed to create a trust in the property conveyed, for the benefit of his wife and five minor children. The instrument required the trustee to collect and receive the moneys, proceeds and income arising from any disposition that might be made of the premises and property granted and sold, and to invest the same in good and safe interest-paying securities, and to collect and receive the interest and income arising therefrom, and also, in his discretion, the principal, and for that purpose to dispose of such securities as he should think best, whether from interest or principal, again to invest and to reinvest, in his discretion; and out of the moneys or income arising from the property granted and sold, or the proceeds thereof, to pay the expenses of executing and carrying out the trust and a reasonable compensation to him for his services as trustee; and to apply the balance of the said income, and the principal, so far as in his judgment might be required, to the support and maintenance of the grantor's wife and children. And on the arrival of the youngest of said children then living, at the age of twenty-one years, or upon the decease of M. and A., the two youngest children, should they die before that time, to convey to

Levy *v.* Hart.

the children then living, and to the grantor's wife, or to such of them as should survive, and the descendants of any such of them as might be dead, the said property then remaining in trust, in equal shares and proportions; the descendants of the deceased child to take the share their parent, if alive, would have taken.

*Held* that the effect of the language used in the deed was, that the trust should continue until the grantor's youngest child then living should attain twenty-one years of age, in case that age was reached within the lifetime of M. and A. That if it should be, then the trustee must convey to the grantor's wife and children, even if all of them should at that time be living. That if that age should not be attained while M. and A. were living, then at their decease he must convey, if every one of the surviving children at that time should continue to be minors.

That there could be no possibility, therefore, of the estate of the trustee extending beyond the duration of the two designated lives; and it was not within the prohibition of the statute relating to future estates in lands, or the statute relating to the suspension of the ownership of personal property.

Both those statutes allow the title to be suspended for two lives in being and ascertained when the deed is made; and no greater suspension was provided for in this case. *Per* DANIELS, J.

If a trust is void, as suspending the power of alienation, and the absolute ownership of the property conveyed, beyond the period of two lives in being when the trust was created, the grantor of the trust cannot maintain an action in equity to set aside the trust deed on the ground that such is its legal character. If it be void, it cannot be even a cloud upon the grantor's title; because, if void upon its face, it cannot by any possibility be productive of injury to him, or his estate, and therefore will furnish no ground authorizing a court of equity to remove it, as likely to prejudice the grantor, or his estate.

The grantor in a trust deed, as the legal owner of the property conveyed, has no right to maintain an action to obtain a construction of the deed. That privilege is confined to the trustee, or those claiming under the trust and requiring its execution.

APPEAL from a judgment entered at a special term, on a trial before Justice DANIELS, without a jury.

This action was brought by the plaintiff, the grantor, against the defendant Mitchell Hart, trustee, and the other defendants, the beneficiaries thereunder, to set aside and vacate a deed of trust made on the 19th day of July, 1865. This deed purported to convey, and did convey the interest of the plaintiff of, in and to, the real and personal property of which Uriah P. Levy died seised, as one of the

heirs at law and next of kin to said deceased, to said Mitchell Hart, as trustee, "absolutely forever, in trust nevertheless, and to and for the uses, interests and purposes" stated therein, and as follows:

"*First.* To take possession of, rent, demise, sell, convey and generally absolutely to dispose of the said lands and real estate, and ask, demand, sue for, collect and receive the said moneys, choses in action and other property, and the proceeds thereof, including the proceeds arising from any sale or other distribution of the share of the said parties of the first part in any real estate which was of the said Uriah P. Levy, deceased, as to which actual partition shall not be made or which the court shall decree to be sold, in order that distribution be had out of the proceeds.

*Second.* To collect and receive the moneys, proceeds and income arising from any disposition that may be made of the premises and property hereby granted and sold, and invest the same in good and safe interest-paying securities, and to collect and receive the interest and income arising therefrom, and also in his discretion the principal, and for that purpose to dispose of such securities as he shall think best, and the avails of such securities, whether from interest or principal, again to invest and to reinvest in his discretion.

*Third.* Out of the moneys or income arising from the property hereby granted and sold, or the proceeds thereof, to pay the expenses of executing and carrying out this trust and a reasonable compensation to him, said party of the second part, for his services as trustee.

*Fourth.* To apply the balance of the said income and the principal, so far as in his judgment may be required, to the support and maintenance of the said Fanny, and to the support and maintenance and education of the infant children of the said parties of the first part—named Isabella, Jefferson, Louis, Mitchell and Amelia Levy.

*Fifth.* On the arrival of the youngest of said children

then living at the age of twenty-one years, or upon the decease of the said Mitchell and Amelia, the two youngest children, should they die before that time, to convey to the said children then living and to the said Fanny, or to such of them as survive, and the descendants of any child that may be dead, the said property then remaining in trust, in equal shares and proportions, the descendants of the deceased child to take the share their parents, if alive, would have taken."

The plaintiff alleged in his complaint that at and before the execution of said deed by him, he resided at the city of Wilmington, in the State of North Carolina, at which place he executed said deed; that he was induced to and did make said deed in consequence of, under and by the suggestions, statements, inducements and pretenses made to him by the defendant Fanny his wife, and her aiders, advisers and abettors, and upon which the plaintiff relied; that the said property was about to be, or would be, confiscated by the government of the United States. That the said State of North Carolina was, at the time of the execution of said deed by the plaintiff, in a state of rebellion to, and at war with the government of the United States, and was one of the seceding states, and *de facto* one of the Confederate States of America, so-called. That before the preparation of the said deed by his counsel, he, the plaintiff, instructed him to make said deed revocable, and to insert the name of Henry Hart therein as the trustee thereunder. That said deed was executed by the plaintiff, at the date thereof, in the State of North Carolina, of which state the plaintiff had been and was from the year 1861, and was up to about the month of February, 1866, a resident, citizen and freeholder; that on or about the month of February, 1866, this plaintiff came to the city of New York. That upon his arrival in said city, he was advised by his counsel that his acknowledgment of said deed, which had been previously made and taken in the

Levy *v.* Hart.

said State of North Carolina, was not valid or effectual, whereupon, and on the 28th day of February, 1866, he acknowledged said deed before an officer in the city of New York. That at the time of such re-acknowledgment of said deed, the plaintiff did not read or examine the same, nor was said deed in his possession or read to him, nor did he know that Mitchell Hart's name was inserted therein as trustee; nor did he know that said deed by its terms was irrevocable, but to the contrary thereof supposed said deed to be revocable, and that Henry Hart's name appeared as trustee therein. That the name of Mitchell Hart was inserted therein without the consent, knowledge or authority of the plaintiff. And he, the plaintiff, was not aware, and did not know of said change of trustees until in or about the month of July, 1866, when, upon a subsequent visit to the city of New York, said plaintiff was informed thereof by the defendant Mitchell Hart.

The plaintiff further, upon information and belief, alleged that all and every the pretense, suggestion, inducement and statement, so as aforesaid made to him by said defendant Fanny, her aiders and abettors, were without foundation, force or effect, and were false, fraudulent and untrue, and were so made to induce him to execute said deed for the benefit of said Fanny and the other the said defendants, and to the exclusion of the plaintiff from all interest he had or might derive from said property so conveyed by said deed, and from all and every control thereof. That the entire estate, real and personal or mixed, covered by said deed, and granted, conveyed or transferred thereby, amounted in the aggregate to about the sum of $50,000, of which said defendant Hart as such trustee had become possessed of about $43,000 before the commencement of this action. And the plaintiff further stated that he was informed, advised and believed, and therefore alleged, that the said deed, and each and every

Levy *v.* Hart.

the provisions, accumulations, and trusts, raised and created thereby, is and are without legal validity or . effect, and is and are of no force, validity or effect as against the plaintiff, and as to him that the said deed, the various provisions thereof, the accumulations and trusts, and each and every of them created thereby were absolutely void and of no effect, as being contrary to, and against the form of the statute in such case made and provided, and that the intentions of the plaintiff as expressed in said deed and the various provisions thereof cannot, for that reason, be carried out or enforced. That by the terms, tenor, effect, true intent and meaning of the said deed, the absolute power of alienation and absolute ownership of the property mentioned and described therein is suspended for a longer period than during the continuance of not more than two lives in being at the creation of the estate therein, that is to say, the date of said deed, against, and contrary to the form of the statute in such case made and provided; and the trusts and provisions of said deed creating and suspending such power of alienation and absolute ownership of said property contained in the fourth and fifth paragraphs of said deed, are absolutely void and of no effect. That by the terms, tenor, effect, true intent and meaning of the provisions of said deed, and particularly of the second, fourth and fifth paragraphs thereof, an accumulation of the issues and profits of real property, and the interest of money and the income and profits of personal property, is directed for a longer period and for the benefit of persons not authorized to receive the benefit of such accumulation contrary to, and against the form of the statute in such case made and provided—such directions, so as aforesaid made, includes amongst the beneficiaries thereunder, an adult, the said defendant Fanny, as well as one or more minors, and is for that cause absolutely void and of no effect as against the plaintiff, and that the beneficiaries thereunder acquire no right or interest

under such direction or the accumulation directed thereby.
That the remainder and remainders over, provided for
in and by the terms of said deed beyond the persons named
as beneficiaries thereunder, are absolutely void and of no
effect; that the estate thereby limited, that is to say, such
remainder and remainders are contingent and depend
upon, and are not separable from, the trusts and accumu-
lations created and directed by the provisions of said deed,
and cannnot for that cause take effect, and fail. And
that the property which purports to be conveyed under and
subject to the trusts, accumulations and estates created and
directed thereby, did not by the terms of said deed pass out
of the plaintiff, or vest in any or either of the persons
named in said deed, either as trustee or beneficiary there-
under. And the said property remains in and is vested in
in the plaintiff as the absolute owner thereof, free and
clear of the trusts, accumulations and estates created there-
by. And that the plaintiff is entitled to the immediate pos-
session thereof. Whereupon the plaintiff demanded judg-
ment against the said defendants, that the said deed, and
each and every the trust and trusts, perpetuity and perpe-
tuities, remainder and remainders, estate, limitation, sus-
pension, accumulation and contingency created or attempt-
de to be created thereby, be ordered and adjudged by
this court to be void and of no effect as against the plain-
tiff, and that he be adjudged to be vested with the title
to, and to be the owner of all and every the property, real
and personal or mixed, described in said deed, and con-
veyed or intended to be conveyed thereby, free and ab-
solved from all and every trust, accumulation, limitation,
perpetuity, contingency, suspension, claim or estate, inter-
est or charge created therein or thereupon by reason of
the provisions of said deed. And that the defendant
Mitchell Hart, as such trustee, be ordered and adjudged
to account to the plaintiff for such of the proceeds and
income of said property, and said property so described

as may have come to his hands, possession, or under his control; and the disposition, if any, by him made thereof, and generally his proceedings in the premises. And that this court would, by an order to be made for that purpose, enjoin and restrain the defendant Tillotson as referee, and the defendant Virginia Ree as administratrix, from paying over, delivering to, assigning, conveying or in any manner transferring to said defendant Mitchell Hart, as such trustee or assignee of the plaintiff, any property real or personal, of what name or description soever, now being and remaining in their or either of their hands as such referee or administratrix, of which the plaintiff at any time became seised, or to which he became entitled as one of the heirs at law and next of kin of Uriah P. Levy, deceased, or the distributive shares of the plaintiff in the proceeds arising from the sale by said referee of the real estate then lately of the said Uriah P. Levy, deceased, heretofore adjudged by this court to be paid to said defendant Mitchell Hart, as such trustee, until the determination of this action, or the further order of this court. And that said defendant Mitchell Hart might, by an order of this court, be enjoined and restrained from exercising the trust, or any trust or power, or pretended trust or power, created or attempted to be created by the terms and provisions of said deed; or from demanding, collecting or receiving from any person or persons, and from in any manner interfering with the estate, property, real or personal, distributive share or shares, income, proceeds or other interest attempted to be conveyed and transferred by, or described and included, or intended to be included, in the provisions of said deed, until the determination of this action, or the further order of this court. And that the said deed might be adjudged to be reformed and made revocable at the will of the plaintiff, and that said defendant Hart might be adjudged to surrender the trusts, property, estate, interest and rights by him acquired, under and by virtue

of the provisions of said deed, and his appointment as such trustee, be adjudged void and of no effect, and revoked. And for general relief.

The defendants answered, admitting the making and execution of the deed of trust, but denying most of the allegations in the complaint; especially denying that any or either of the provisions, accumulations or trusts raised or created by said deed, is or are without legal validity or effect, or is or are of no force, validity or effect as to the plaintiff; or that as to him the said deed, or the various provisions thereof, or the accumulations and trusts, or either or any of them, are void or of no effect, or that any or either of them are contrary to the statute in such case made and provided, or that the intentions of the plaintiff, as expressed in said deed and the various provisions thereof, cannot be carried out or enforced, &c.

The justice before whom the action was tried found, as matters of fact: 1. That on the 19th day of July, A. D., 1865, the plaintiff and his wife, the defendant Fanny Levy, duly executed to the defendant Mitchell Hart the trust deed in the complaint set forth.

2. The plaintiff and his said wife, the defendant Fanny Levy, had then living their five infant children, respectively named: Isabella, then of the age of 15 years and over; Jefferson, then of the age of 13 years and over; Louis, then of the age of 12 years and over; Mitchell, then of the age of 9 years and over; Amelia, then of the age of 7 years and over. All of whom are now living, and neither of whom has attained the age of 21 years, and that said defendant Fanny Levy was then of the age of 37 years and over, and is yet living.

3. That at the time of the execution of the said deed, the plaintiff's said wife and the said children were the beneficiaries provided for by it; the plaintiff was entitled, as one of the heirs at law and next of kin of Uriah P. Levy, deceased, to a distributive share of one-seventh in

. the real and personal estate of said Uriah P. Levy, subject to the right of dower of his widow, which was conveyed in and by said deed to the defendant Mitchell Hart. That a portion of such realty has come into the hands of the defendant Gouverneur Tillotson, as referee in the action for partition referred to in the said deed, and a portion of the personalty into the hands of the defendant Virginia Ree, administratrix &c. of the said Uriah P. Levy, deceased. And that a portion of the personalty and the proceeds of a part of the real estate of said Uriah P. Levy, deceased, have come into the hands of the defendant. Mitchell Hart as trustee.

4. That none of the representations or inducements to the plaintiff to execute the said deed, alleged in the complaint, were proven.

5. That, as appeared before him, the said deed was in nowise altered after it was executed, nor was it executed through any mistake or ignorance on the part of the plaintiff, nor prepared otherwise than as the plaintiff had directed.

And as conclusions of law upon the foregoing facts, the justice found: 1st. That the said deed did not suspend the power of alienation beyond two lives in being at the time of its execution.

2d. That the said deed did not unlawfully provide for an accumulation of the income.

3d. That the said deed was valid, and its provisions should be carried into effect.

4th. That the property, which was the subject matter of the said deed, passed out of the plaintiff upon the execution and delivery thereof, and became vested in the defendant Mitchell Hart, upon the trusts therein specified and thereby created.

5th. That the plaintiff was not entitled to recover in this action against the defendants.

And that judgment should be entered in favor of the defendants against the plaintiff, with costs to be adjusted.

The following opinion was given by the justice, at special term:

DANIELS, J. "The plaintiff in this action insists that a trust deed, executed and delivered by him to the defendant, purporting to convey real estate, and to transfer personal property to the defendant, is inoperative and void on account of certain of its provisions contravening the prohibitions of the statutes relating to future estates in lands and the absolute ownership of personal property. By the terms of the deed the grantor professed to create a trust in the property conveyed for the benefit of his wife and five minor children. This trust, it is claimed, is void as suspending the power of alienation and the absolute ownership of the real and personal property beyond the period of two lives in being when the deed was delivered. And if such is its character, it necessarily follows, as the plaintiff claims in his complaint, that it is void, and as such conveyed no title or interest whatever to the defendant. Assuming that to be its legal character, it might properly be asked, here, what right that confers upon the plaintiff to maintain an action in equity, concerning it. As such it cannot be even a cloud upon his title, because, if void upon its face, it can by no possibility be productive of injury to him or his estate, and for that reason will furnish no ground authorizing a court of equity to remove it, as likely to prejudice the plaintiff or his estate. (*Cox* v. *Clift*, 2 *Comst.* 118. *Scott* v. *Onderdonk*, 14 *N. Y. Rep.* 9. *Heyward* v. *City of Buffalo, Id.* 534.) And to obtain its construction, merely, the plaintiff as the legal owner of the property has no right to maintain the action. That privilege is confined to the trustee, or those claiming under the trust and requiring its execution, and it is not broad enough to include the party claiming as owner, and who

may properly protect himself at law. (*Bowers* v. *Smith*, 10 *Paige*, 193. *Post* v. *Hover*, 33 *N. Y. Rep.* 593, 602.) Instead, however, of dismissing the complaint on this ground, as could without any equitable impropriety be done, the question already stated, and which was argued with so much zeal and ability at the trial, will be examined and disposed of the same as though no obstacle to the equitable jurisdiction of the court stood in the way. For that may possibly lead to a useful abridgement of the litigation into which the members of the plaintiff's family have unfortunately become involved.

The trust which it is declared the plaintiff intended to create by the deed in controversy, requires the defendant Hart to collect and receive the moneys, proceeds and income arising from any disposition that may be made of the premises and property ' granted and sold, and invest the same in good and safe interest-paying securities, and to collect and receive the interest and income arising therefrom. And also, in his discretion, the principal, and for that purpose to dispose of such securities as he shall think best, whether from interest or principal, again to invest and to reinvest, in his discretion;' and out of the moneys or income arising from the property granted and sold, or the proceeds thereof, to pay the expenses of executing and carrying out this trust, and a reasonable compensation to him for his services as trustee, and to apply the balance of the said income and the principal, so far as in his judgment may be required, to the support and maintenance of the grantor's wife and children. And on the arrival of the youngest of said children then living at the age of twenty-one years, or upon the decease of said Mitchell and Amelia, the two youngest children, should they die before that time, to convey to the said children then living, and to the said Fanny, ' his wife,' or to such of them as survive, and the descendants of any such of them as may be dead, the said property then remaining in trust, in equal shares and

Levy *v.* Hart.

proportions, the descendants of the deceased child to take the share their parent, if alive, would have taken.'

These are the only provisions contained in this deed bearing upon the point whether the limitation placed upon the trust can extend its duration beyond two lives in being when the deed was delivered. It is claimed that it has that effect, because its continuance is required by the language of the deed, until the youngest of the children living at that time shall attain the age of twenty-one years; and if this was the fair construction and import of that language, such would undoubtedly be its effect; but the grantor in the deed immediately adds a qualification or restriction upon these terms of such a nature as to prevent the continuance of the trustee's estate beyond the lifetime of his two children, Mitchell and Amelia, then living. For, after declaring that the trustee shall convey the estate when the youngest child living shall arrive at the age of twenty-one, he adds that it shall be done upon the decease of Mitchell and Amelia, if they should die before that time. This could not have been added for any other purpose than to limit the estate of the trustee in such a manner that it could not extend beyond two lives, namely, those of Mitchell and Amelia. No other object could have been within the plaintiff's intention when he made the deed; for this clause in no manner tends to define or explain the language previously used. Indeed that required no definition or explanation whatever, for its import was clear and unmistakable. Its only office was to impose a legal limitation of what, without it, would have rendered the trust unlawful. And as such, it does not permit the trust to be extended or continued beyond the duration of the two lives mentioned. The law will not allow the duration of a trust to be continued until one person, of a class consisting of more than two, attains a certain age or dies, because he may neither attain a certain age nor die until every one of the others may have

died, which would, if valid, have the effect of extending the trust beyond the duration of two lives, and this the statute prohibits. But to declare the continuance of a trust until one of that class shall attain a certain age, provided he does so before the death of two individuals ascertained and designated, cannot by any possibility have that effect. For it is then impossible to extend the trust beyond the lives of those two persons, and that, very obviously, is all the grantor intended or endeavored to do by this deed. The effect of the language used is, that the trust shall continue until his youngest child then living attains twenty-one years of age, in case that age is reached within the lifetime of Mitchell and Amelia. If it should be, then the trustee must convey to the plaintiff's wife and children, even if all of them should at that time be living. If that age shall not be attained while Mitchell and Amelia are living, then at their decease he must convey, if every one of the surviving children at that time continue to be minors. There can be no possibility, therefore, of the estate of the trustee extending beyond the duration of the two designated lives, and it is not within the prohibition of the statutes relating to future estates in lands or the suspension of the ownership of personal property. Both those statutes allow the title to be suspended for two lives in being and ascertained when the deed is made, and no greater suspension has been provided for in this case.

The second clause in the deed makes use of terms from which it might fairly be implied that the trustee was expected to accumulate the income of the property without limiting the accumulation upon the minority of the infants, or providing it for their benefit. But this is by no means made imperative on the trustee. A discretionary power only is given to him, which is very clearly controlled by the following clauses in the deed, showing that no accumulation was expected to arise under it. These clauses direct that out of the moneys or income arising

from the property, or the proceeds of it, the expenses of the trust and a reasonable compensation to the trustee should first be paid; and after defraying those, the trustee is directed to apply the balance of the said income and the principal, so far as in his judgment may be required, to the support and maintenance of the wife and family of the grantor. The liberty given to the trustee to resort to the principal of the estate in the event that he may deem the expenditure of a part of that required for the suitable support and maintenance of the family, is a very clear indication that the grantor did not anticipate that any accumulation would be made out of the profits or income. And under that state of the case the deed cannot be said to provide for an unlawful accumulation of the income; but even if it did, the direction only, and not the deed itself, would be void.

The result of this examination of the deed is, that the defendants are entitled to a judgment dismissing the complaint in the action, with costs."

Judgment being entered accordingly, the plaintiff appealed to the general term.

*Samuel J. Crooks,* for the appellant. The questions involved in this appeal are more immediately connected with the terms of the deed. It is found by the judge who tried this action at special term, that one of the beneficiaries under the deed (Mrs. Levy) was an adult at the time of the execution of the deed, and that neither of the minor children had attained their majority, nor had said minors or either of them attained majority at the time of the commencement of this action. The property covered by the deed, and conveyed thereby, consisted mainly of real estate situated in the city of New York. The avails of the sale of the same in partition and by the judgment of this court, are mostly in the hands of the trustee; a small balance still remaining in the hands of

the referee, the defendant Gouverneur Tillotson, Esq. For the purpose of this action, the question whether the property conveyed was real or personal, can make no material difference in the final determination of the action. All the allegations material to a determination of the appeal, upon the principal questions involved, are conceded by the judge who tried the case. The appeal presents the following questions for review by this court, that is to say : 1. Do the trusts created by the terms of said deed suspend the absolute powers of alienation and absolute ownership of the property mentioned and described therein, for a longer period than that authorized by statute ; that is to say, for a longer period than during the continuance of not more than two lives in being at the date of the deed, *i. e.*, creation of the estate ?

2. Does the deed, by its terms above cited, direct an accumulation of the issues and profits of real property and the interest of money, and the income and profits of personal property for a longer period, and for the benefit of persons not authorized to receive the same, against the form of the statute in such case made and provided?

If either of these questions should be answered in the affirmative, then,

3. Does the remainder over, contingent upon the trust and accumulation authorized and directed by the terms of said deed, take effect or fail, and the property revert, or more properly, remain in the grantor, relieved of the estates, trusts and limitations attempted to be created by said deed ?

Before proceeding to state the law governing the case the plaintiff submits, it may be quite proper to presume that the scheme of the deed is this: 1st. That the income of the estate, real and personal, conveyed by the deed, should be invested in good and safe interest-paying securities, and the interest and income arising therefrom, and the principal, (if collected,) was again to be

invested and reinvested, in the discretion of the trustee, (grantee,) after payment of the expenses of executing and carrying out the trust.

2d. That then the balance of such income, and the principal, so far as in the judgment of said trustee might be required, was to be applied to the support and main-tenance of the defendant Fanny Levy, and the support, maintenance and education of the infant children of the said grantor (plaintiff) and the said Fanny, five in number.

The property was all to be kept together until the arrival of the youngest of said children then living at the age of twenty-one years, or until the decease of the two youngest children, (therein named as Mitchell and Amelia,) should they die before that time; the said prop-erty then remaining in trust was to be conveyed by said trustee to such of said children as should then be living, and the said Fanny, or to such of them as survived, and the descendants of any child that might be dead, in equal shares and proportions.

It will be seen, and is admitted, that the entire property in controversy, (say $50,000,) except about $4000, con-sisted of real estate, at the time of the execution and de-livery of the deed, and so continues for the purposes of this action, and as to all the parties thereto. (3 *Selden,* 242.) "A demise of real estate to executor with power to sell, but without directing a sale, does not effect a conversion of the real into personal estate." (*Id.*)

I. The question of the right of the plaintiff (grantor) to maintain this action was first raised in this case by the judge (Daniels) in his opinion. Although the learned judge expresses a doubt as to such right, he does not dis-miss this action for that cause, and as there is no finding disposing of this case upon that ground, the question is wholly on this court. If the question were before this court, it is submitted that the case is widely different in

character from those cited by the learned judge in support of his opinion.

II. " The provisions of the statute controlling the trusts created, and accumulations directed by this deed, and as to real property, are as follows : (3 *R. S.* 5th ed. page 16, § 55, *sub.* 3 :) " Express trusts may be created for any or either of the following purposes : To receive the rents and profits of lands and to apply them to the use of any person during the life of such person, or for any shorter term, subject to the rules prescribed in the first article of this title." " An accumulation of rents and profits of real estate for the benefit of one or more persons, may be directed by any will or deed sufficient to pass real estate, as follows : If such accumulation be directed to commence on the creation of the estate out of which the rents and profits are to arise, it must be made for the benefit of one or more minors then in being and terminate with their minority." * * (3 *R. S.* 5th ed. *p.* 13, § 37, *sub.* 1.) The same statute by part of section 38, provides that "all directions for the accumulation of rents and profits of real estate, except such as are herein allowed, shall be void." And by section 15, (3 *R. S.* 5th ed. *p.* 11,) " The absolute power of alienation shall not be suspended by any limitation or condition whatever, for a longer period than during the continuance of not more than two lives in being at the creation of the estate :" * * And as to personal property, the provisions are as follows: (3 *R. S.* 5th ed. *p.* 75, § 3, *sub.* 1,) " An accumulation of the interest of money, the produce of stock, or other increase or profits arising from personal property, may be directed by any instrument sufficient in law to pass such personal property, as follows : If the accumulation be directed to commence from the date of the instrument, or from the death of the person executing the same, such accumulation must be directed to be made for the benefit of one or more minors then in being, or in being at such death, and to terminate at the

expiration of their minority." * * By section 1 (3 *R. S.
5th ed. p.* 75) it is provided, that "The absolute ownership
of personal property shall not be suspended by any limita-
tion or condition whatever, for a longer period than during
the continuance and until the termination of not more
than two lives in being at the date of the instrument con-
taining such limitation or condition." * * It is believed
to be well settled that there is no limitation upon the
creation of a trust estate, in and as to personal property,
either as to persons or the continuance thereof, except as to
the duration of such estate as provided in section 1 (3 *R. S.
5th ed. p.* 75) above cited. In any view of the provisions
of this deed, whether the property conveyed be real or
personal, can make no difference in the result to be arrived
at, if the views entertained by the plaintiff are correct.

III. The trusts created by the terms of the deed as herein
recited are absolutely void. If of real estate, as suspending
the power of alienation for a longer period than the con-
tinuance of not more than two lives in being at the date of
the deed. If of personal property, as suspending the abso-
lute ownership of such property for a like period. "The
power of alienation cannot be suspended for a longer period
than during the continuance of not more than *two lives* in
being at the creation of the estate; and every limitation by
which the power of alienation *may* be suspended for a
longer period is void in its creation. The lives must be
*designated*, either by naming two persons in particular, or
by limiting the estate on the *first two lives which shall fall*
in a class of several individuals. If the last two lives are
taken, it is obvious that the suspense will continue for as
many lives as there are persons in the class." (*Hawley* v.
*James*, 16 *Wend.* 172, *Bronson, J.*) "Life must in some
form enter into the limitation, so that the power of alien-
ation can *in no event* be suspended beyond two designated
lives. No absolute term, however short, can be maintain-
ed." (*Per Bronson, J., in Hawley* v. *James*, 16 *Wend.* 64;

*and see decree entered in above case at p.* 274.) The ruling of Bronson, J., as above, has received the approval and been followed by the courts since. (*See opinion of Gridley, J., in Jennings* v. *Jennings,* 7 *N. Y. Rep.* 547; *Kane* v. *Gott,* 7 *Paige,* 521; *S. C.,* 24 *Wend.* 641; *Boynton* v. *Hoyt,* 1 *Denio,* 53; *Morgan* v. *Masterton,* 4 *Sandf.* 442.) By this rule it will be seen that the power of alienation was suspended in the case at bar, or which is the same thing, might be suspended, during *six lives.* Suppose the three eldest of the five children living at the date of the deed should die, and the remaining children should arrive at the age of twenty-one years. It is clear that by the terms of the deed the estate must be kept together, and the power of alienation must be suspended during five lives, and for six if the wife Fanny be included. It is apparent that the conveyancer in drafting this deed had in view the rules as adopted in the foregoing cases, so far as the same required the lives to be *designated* by name, but overlooked the important fact that "*in a class of several individuals*" the rule required that such designation should be of the "*first two lives that fall.*" In the case at bar, the lives designated are those of the two youngest children in a class of several. If these children live, the estate as to all continues until the youngest of the two attains majority; but if the three eldest children die, the estate does not cease; although the statute has been more than satisfied in the lives of *three.* The fault is that this deed designates the two lives least likely to fall, and in doing so falls into the error which the statute was designed to remedy. The mere designation of two persons by name, upon whose lives the estate depends or during which it is to continue, is not necessarily a compliance with the statute. The lives thus designated by name, if selected from a number of individuals, (constituting a class,) beneficiaries under the same deed, may be selected in such a manner as to continue the estate for any number of lives preceding those

selected.   Such is the case in the present instance.   The
rule as to designating the lives clearly means (where there
is a class of persons named as beneficiaries), that the con-
tinuance of the estate shall be made to depend upon the
*first two lives that fall.*   "The rule is the same whatever may
be the description of the property to which it is applied.
It is a settled law that to render a limitation void, which
if sustained would create a perpetuity, it is sufficient that
the event upon which it depends *may happen;* and here
the event is not only probable, but almost certain to hap-
pen."   (*See opinion of Duer, J., in Andrews* v. *N. Y. Bible
and Prayer Book Society,* 4 *Sandf.* 56.)   In another view,
the limitation if sustained would create a perpetuity.   The
estate is virtually limited upon minorities.   The children
may all live and all attain majority.   If so, the estate con-
tinues during five lives at least, by the terms of the deed.
The limitation is in the disjunctive, and is until the young-
est of the children attains twenty-one years, or the two
youngest die, if they shall die before the youngest of the
two attain majority.   Clearly the event upon which the
limitation depends may happen in the case as last stated.
If so, the limitation is void.   A limitation upon minorities
is virtually a limitation upon lives.   (10 *Barb.* 300.)   It will
be noticed that the limitation upon or time during which
the trust is to continue, is until "the arrival of the young-
est of said children then living at the age of twenty-one
years, or until the decease of the said Mitchell and Amelia,
·the two youngest children, should they die before that
time."   This limitation does not in any sense confine or
bound the continuance of the trust estate by life; on the
contrary, the *utmost limit* for the continuance of the estate
is fixed for the period when the youngest child arrives at
the age of twenty-one years.   That this event *may happen*
is clear; if so the estate is limited upon an *absolute or certain
term,* and cannot be supported.   The *utmost limit* for the
continuance of the estate must be bounded by life, or the

estate will be void in its creation. (*Hawley* v. *James, before. cited. Boynton* v. *Hoyt,* 1 *Denio,* 58.)

IV. The direction in the deed for the accumulation of the trust estate, whether of real or personal property, for the benefit of an *adult* as well as minors, is void. (16 *Wend.* 61. *Harris* v. *Clark,* 7 *N. Y. Rep.* 242 ; *and see statutes above cited.*) A void trust for the accumulation of the income of property invalidates the conveyance of the principal, when the direction for such accumulation involves an illegal suspension of the alienation of real and absolute ownership of personal property. (15 *N. Y. Rep.* 322. *See* 7 *id. above cited.*)

V. The remainder over is limited upon an uncertain event, and is therefore contingent, and falls with the trust term. "Future estates are contingent while the person to whom, or the event upon which, they are limited to take effect remain uncertain." (3 *R. S. 5th ed. p.* 11, § 13.) The limitation in favor of the defendant Fanny the wife, and such of the children as survive and the descendants of those who do not, is a contingent remainder which from the terms of its creation cannot take effect, if at all, until the expiration of the trust term. By the terms of the deed, the trustee is directed to convey to such persons as last aforesaid ; the said property then remaining "in trust, in equal shares and proportions, the descendants of any child to take the share their parent, if alive, would have taken." Such conveyance to be made upon the happening of the contingency, or in the event "of the arrival of the youngest of said children then living at the age of twenty-one years, or the death of Mitchell and Amelia, the two youngest children, should they die before that time." Clearly the event and the person to whom the remainder in this case is limited are uncertain. (*See* 4 *Sandf.* 442.) The doctrine as to what constitutes an illegal limitation rendering the estate void as suspending the power of alienation and absolute ownership of property, will be found

Levy *v.* Hart.

thoroughly discussed in the cases of *Yates* v. *Yates,* (9 *Barb.* 346, 347, *by Wright, J.;*) *Levy* v. *Levy,* (33 *N. Y. Rep.* 128, *&c.;*) *Rose* v. *Rose,* (*Court of Appeals, Sept.* 1864;) *Dodye* v. *Pond,* (23 *N. Y. Rep.* 69;) *Leonard* v. *Burr,* (18 *id.* 96 ;) *Bascom* v. *Albertson,* (34 *id.* 608, *&c., by Porter, J.;*) and also in the case of *Beekman* v. *Bonsor,* (23 *id.* 314, *&c.*) The decisions in all these cases lead to the same conclusion as that arrived at by Mr. Justice Bronson in the case of *Hawley* v. *James;* and although the courts have at times insisted upon a perversion of the plain'letter of the statute, to enforce some peculiar crochet, yet it is submitted that in no case have the court departed from the letter of the statutes, when a satisfactory arrangement of the estate could be safely left in the hands of the ultimate owner, as in this case. The court will not bend the statute for the purpose of depriving a grantor and father, as in this case, of the ultimate disposition of his property, or the making a suitable settlement for his family. The law has clothed the head of a family with this right, of which courts have not attempted to deprive him or her.

*Clarkson N. Potter,* for the respondents.

*By the Court,* GEO. G. BARNARD, J. This case was properly disposed of at special term. The opinion of Justice DANIELS fully meets all of the objections of counsel.

The judgment is right, and should be affirmed.

[NEW YORK GENERAL TERM, June 7, 1869. *Clerke, Cardozo* and *Geo. G. Barnard,* Justices.]